IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARLIN P.,**[1] <br><br> Plaintiff, <br><br> v. <br><br> **MARTIN O'MALLEY**, Commissioner of Social Security, <br><br> Defendant. | Case No. 6:24-cv-00546-AN <br><br> **OPINION AND ORDER** |

**Adrienne Nelson, United States District Judge.**

     Marlin P. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the decision of the Commissioner.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

### I. Plaintiff's Application

Plaintiff applied for DIB and SSI in 2018, alleging disability as of August 5, 2014. Tr. 477, 489. Plaintiff alleged disability due to Hodgkin lymphoma, spinal laceration, paresthesia, neuropathy, PTSD, adjustment disorder, and spinal stenosis. Tr. 603. Plaintiff was born on November 28, 1969, making him 48 years old on his alleged onset date.

The Commissioner denied Plaintiff's applications initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing took place on November 3, 2020, and the ALJ issued his decision finding Plaintiff was not disabled on January 20, 2021. Plaintiff appealed and on January 14, 2022, the Appeals Council remanded the case for further proceedings. Tr. 255-59.

Supplemental hearings were held before an ALJ on May 17, 2022, and December 15, 2022. Tr. 78, 46. On June 20, 2023, the ALJ issued a new decision, again concluding that Plaintiff was not disabled. The Appeals Council denied a request to review the ALJ's decision, and Plaintiff appealed to this Court. Tr. 1-6.

### II. Sequential Disability Evaluation

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a)

## III. The ALJ's Decision

As a preliminary matter, the ALJ determined Plaintiff met the insured status requirements of the Act through September 30, 2018. Tr. 13. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 5, 2014. Tr. 13. At step two, the ALJ found Plaintiff suffered from the following severe, medically determinable impairments: degenerative joint disease of the cervical spine, lumbar spine, and knees; obesity; bilateral carpal tunnel syndrome ("CTS") (status-post 2021 surgery); ataxia; and neuropathy. Tr. 14. At step three, the ALJ concluded Plaintiff did not have an impairment of combination of impairments that meets or equals a listed impairment. Tr. 17. The ALJ then determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [H]e can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; can frequently handle and finger bilaterally; can frequently reach in all directions, except can occasionally reach overhead bilaterally; and must avoid concentrated exposure to

PAGE 3 – OPINION AND ORDER

    work hazards such a dangerous moving machinery and unprotected heights.

Tr. 18-19. At step four, the ALJ found that Plaintiff is able to perform his past relevant work as a software analyst and as a management analyst. Tr. 28. The ALJ then made an additional finding that Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including such representative occupations as router, routing clerk, marker, and office helper. Tr. 28-29. The ALJ concluded Plaintiff was not disabled through the date of his decision. Tr. 30.

## STANDARD OF REVIEW

  The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

  Plaintiff argues only that the ALJ erred in rejecting the medical opinions of Tatsuro Ogisu, M.D., and Trevor Tash O.T. Specifically, Plaintiff asserts that the ALJ improperly

PAGE 4 – OPINION AND ORDER

rejected credible limitations assessed by these two medical professionals, resulting in a flawed RFC formation. Pl. Br. at 5-10.

## I. Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ is not, however, required to explain how she considered those secondary

medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b)-(c), 416.920c(b)-(c). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods,* 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

    A.    Dr. Ogisu

Plaintiff argues that the ALJ improperly rejected the medical opinion of Tatsuro Ogisu, M.D. On March 5, 2019, Dr. Ogisu performed a comprehensive musculoskeletal examination of Plaintiff at the request of the Social Security Administration. Tr. 1082-87. Based on his examination, Dr. Ogisu opined that Plaintiff would be capable of sitting for up to six hours, standing and walking "up to at least two hours but less than half the time," and he recommended Plaintiff use a cane or walking stick when "venturing outside the home." Tr. 1086. Additionally, Dr. Ogisu concluded that Plaintiff would have "[n]o time restriction" in handling, but that "additional time may be required for activities requiring fine motor skills." *Id*.

The ALJ found Dr. Ogisu's opinion was not persuasive because it was "inconsistent with the claimant's activities of daily living," and "unsupported by examination results." Tr. 24. Specifically, the ALJ noted Plaintiff had continued to work "at and near substantial gainful activity levels" throughout the relevant period, used an elliptical machine "five times per week," and was able to use public transportation and grocery shop without assistance during the relevant

PAGE 6 – OPINION AND ORDER

period. Tr. 24, citing Tr. 1521, 1083. Upon review, the Court finds that the ALJ's conclusions are supported by substantial evidence and are a reasonable reading of the record.

      To start, the record shows that Plaintiff has been consistently active, taking regular exercise, including using the elliptical machine, swimming, walking outdoors, and doing pushups and sit ups. Tr. 121, 1011, 1570, 2084, 2162, 2232, 2253, 2261, 2287. Additionally, Plaintiff has consistently worked at near SGA levels since his release from incarceration in 2018. *See* Tr. 13-14. Plaintiff's robust level of activity is inconsistent with limitations assessed by Dr. Ogisu. Plaintiff argues that, although the record establishes that he continued to work at near SGA levels, "nothing in the record establishes the physical demands of that work" and it was thus improper for the ALJ to find his work activity inconsistent with Dr. Ogisu's opinion. Pl. Br. at 6. However, an ALJ is free to consider any work activity in evaluating the supportability and consistency of a claim. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("an ALJ may consider any work activity, including part time work, in determining whether a claimant is disabled). The fact that Plaintiff has been able to work, consistently from December 2018 on is a significant factor showing he is capable of performing beyond the limitations included in Dr. Ogisu's opinion. The ALJ's conclusions as to Plaintiff's daily activities thus constitute a reasonable reading of the record. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (a court must uphold the ALJ's decision, even where the evidence is susceptible to more than one rational interpretation).

      As to the medical evidence of record, the ALJ reasonably concluded that Plaintiff's treatment records did not support Dr. Ogisu's opinion. For example, Plaintiff frequently had a normal gait upon examination and did not use an assistive device, even when venturing outside. Tr. 24, citing Tr. 1084, 1210, 1225, 1654, 1663, 1674, 1684, 1709, 1713, 1705. Plaintiff states,

PAGE 7 – OPINION AND ORDER

without arguing any specific error, that the evidence cited by the ALJ comes from examinations "more than a year after Dr. Ogisu's opinion," and that these visits were largely for concerns "unrelated to his knee or back pain." Pl. Br. at 7. But neither the timing nor the circumstances of the cited records detract from their validity. The fact that Plaintiff continued to have a steady gait and walk without an assistive device long after Dr. Ogisu's 2019 opinion is evidence relevant to the overall supportability of Dr. Ogisu's medical opinion. The ALJ, therefore, did not err in considering such medical evidence. *See* 20 C.F.R. §§ 404.1520b, 416.920b (the ALJ is charged with considering the record as a whole in determining whether evidence supports a claim of disability). It was therefore proper for the ALJ to consider the treatment notes spanning Plaintiff's entire record in determining if the record supported Dr. Ogisu's opinion. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (the Commissioner's "findings . . . . as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)).

Even if the ALJ had erred in finding Dr. Ogisu's opinion unpersuasive as to the standing and walking limitations, such error would be harmless because, at step four of the sequential analysis, the ALJ concluded Plaintiff was capable of performing his past work. Plaintiff's past work was performed at the sedentary level, therefore even if his RFC limited him to sedentary exertion, his past work would not be precluded. Tr. 28-29. Plaintiff acknowledges this fact in a footnote, stating that "considered in isolation, the ALJ's rejection of standing/walking limitations would be harmless in light of the ALJ's step four finding." Pl. Br. at 5, n.1. However, Plaintiff asserts that "should the court remand on the manipulative limitations" the ALJ's step four findings would be evaluated under new regulations and would limit Plaintiff's past relevant work to work performed in the past five years. This would effectively exclude Plaintiff's past work

PAGE 8 – OPINION AND ORDER

performed at the sedentary level. Pl. Br. at 5, n.1. But the Court can find no reason to remand based on manipulative limitations, and the ALJ's conclusions as to Plaintiff's past relevant work remains undisturbed.

As the ALJ noted, Dr. Ogisu assigned "vague and contradictory" manipulative limitations such as Plaintiff having "no restriction" but also that "additional time may be required for activities requiring fine motor skills." Tr. 24. Consequently, the ALJ recast this limitation in a more cognizable format consistent with the record, limiting Plaintiff to only frequent handling, fingering, and reaching. Tr. 24. Plaintiff on review acknowledges that Dr. Ogisu's opinion failed to specify how much additional time would be required to complete tasks involving fine motor skills but argues that the ALJ's limitation to "frequent" use would still "likely" require a significant amount of extra time. Pl. Br. at 7. This argument is speculative at best. Phrases such as "additional time *may* be required" are entirely ambiguous. The reader is consequently left to question if Plaintiff has any limitation at all, and if so, to what degree such limitation would affect Plaintiff's ability to work. *See Ford*, 950 F.3d at 1156 (finding terms in a medical opinion such as "limited" or "fair" were not useful because they failed to specify meaningful functional limitations). It was therefore entirely reasonable for the ALJ to discount this ambiguous limitation, while still accounting for manipulative restrictions supported by the record. *Id.* at 1149 (noting that it is the ALJ's job to resolve conflicts and ambiguities in the medical record). The Court thus concludes that the ALJ's evaluation of Dr. Ogisu's medical opinion was reasonable and supported by substantial evidence.

      B.     Mr. Tash

In December 2018, Trevor Tash, O.T., performed a consultative examination of Plaintiff for Vocational Rehabilitation Services. Tr. 999-1003. Mr. Tash opined that Plaintiff was capable of performing light work, with additional limitations including that he can only "occasional[ly]

PAGE 9 – OPINION AND ORDER

stand, walk, lift, carry, push, pull, bend, overhead reach and left (nondominant) hand grasp." Tr. 26, citing Tr. 999-1003.

The ALJ found Mr. Tash's opinion to be unpersuasive as to the limitation to occasional standing and walking. According to the ALJ, this limitation "appears to be based on the claimant's reduced range of motion of the knees and mild left limp during examination." Tr. 26. The ALJ noted that these findings contrast with treatment notes indicating Plaintiff generally has normal gait on examination, and that Plaintiff works out regularly three to five days per week. Tr. 26. The ALJ similarly found Mr. Tash's assessment that Plaintiff would only occasionally be able to handle, and finger was unsupported by Mr. Tash's exam which showed that the Plaintiff put forward variable effort on grip strength, as well as medical records showing Plaintiff had recovered successfully from CTS surgery in 2021. Tr. 26-27.

Plaintiff argues the ALJ's reasons for discounting the limitations assessed by Mr. Tash are insufficient. Specifically, Plaintiff asserts that the ALJ improperly relied on Plaintiff's ability to exercise because he does so on an elliptical, to reduce the impact on his knees. Pl. Br. at 9, citing Tr. 1521, 1562. Plaintiff further argues that the ALJ improperly relied on telemedicine appointment as objective evidence that he had a normal gait when walking.

As discussed above, the ALJ did not err in considering Plaintiff's workout activities in discounting the limitations proposed by Mr. Tash. The ALJ had already extensively discussed Plaintiff's ability to exercise, including walking every day, swimming, as well as using the elliptical three to five times a week. *See* Tr. 20-24. In fact, Plaintiff in his own words told Mr. Tash that he "prefers walking to standing" and that he will "speed walk" to catch a train. Tr. 1000. Nor did the ALJ err in considering the objective medical evidence showing Plaintiff frequently had a normal gait upon examination. Throughout the decision, the ALJ identified

PAGE 10 – OPINION AND ORDER

multiple medical records documenting Plaintiff's normal gait. The fact that the ALJ relied on a telemedicine appointment in discounting Mr. Tash's opinion does not detract from the sufficiency of the evidence itself.

As to the manipulative limitations, Plaintiff argues that the ALJ improperly relied on a note from the examination stating he provided variable effort on rapid grip testing, rather than considering that Plaintiff was assessed as having put forth a "fair" effort on the overall examination. Pl. Br. at 9. But Plaintiff's variable effort during testing calls into question the reliability of Mr. Tash's test results. It was therefore proper for the ALJ to consider the reliability of the test results when evaluating the supportability of Mr. Tash's opinion.

Plaintiff further challenges the ALJ's reliance on evidence showing he fully recovered from CTS surgery as untimely because Plaintiff's CTS surgery took place three year after Mr. Tash performed the consultative examination. Pl. Br. at 9. But the Court can find no error in the ALJ's conclusions here. To start, Mr. Tash performed his consultative examination in 2018, but objective testing from 2020 showed Plaintiff still had only mild to moderate CTS. Tr. 1966. Additionally, the fact that Plaintiff did not seek out surgical intervention until December 2021, a full three years after Mr. Tash performed his consultative exam, supports the ALJ's conclusions that the limitations proffered by Mr. Tash were not supported by the record. And, as the ALJ noted, Plaintiff was recommended to have CTS surgery in July 2021, but he opted to "hold off" until December, as he was working on his disability petition. Tr. 1835. Finally, as the ALJ pointed out, Plaintiff's CTS surgery was successful; the doctor ordered no additional post-surgery follow-up, and only reluctantly granted Plaintiff's request for a four-week weight restriction. Tr. 1821. The mild objective test results, in addition to the lengthy time between Dr. Tash's examination and Plaintiff's CTS surgery are substantial evidence supporting the ALJ's

PAGE 11 – OPINION AND ORDER

conclusions as to the supportability of Dr. Tash's opinion. The Court thus leaves the ALJ's medical opinion analysis undisturbed.

In sum, the Court finds the ALJ properly evaluated the supportability and consistency of the medical opinions and supported his conclusions with substantial evidence.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 11th day of March, 2025.

                                        Adrienne Nelson
                                        United States District Judge